UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN AUDINO,                                                   **REPORT**
                              Plaintiff,                        **and**
            v.                                           **RECOMMENDATION**

GLOBAL IVR SOLUTIONS, LLC,
WORLDLINK SERVICES CORPORATION,                          **16-CV-796V(F)**

                              Defendants.
_____

APPEARANCES:          THE TARANTINO LAW FIRM, LLP
                      Attorneys for Plaintiff
                      JENNA S. BURKE,
                      JUSTINA L. POTENZO,
                      KEVIN P. WICKA, of Counsel
                      1500 Rand Building
                      14 Lafayette Square
                      Buffalo, New York  14203

                      GLOBAL IVR SOLUTIONS, LLC
                      Attn:  Adam Long, Managing Partner and Owner
                      1330 Niagara Falls Boulevard, Suite 200
                      Tonawanda, New York 14150

                      WORLDLINK SERVICES CORPORATION
                      Attn:  Adam Long, Managing Partner and Owner
                                William Long, Owner
                      1330 Niagara Falls Boulevard, Suite 200
                      Tonawanda, New York  14150

        This case arises from violations of the Employment Retirement Security Act

of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), the Fair Labor Standard Act of 1938,

29 U.S.C. § 201, *et seq.* ("FLSA"), New York State Labor Law ("N.Y.LL") §§ 195-2,

198[l][b], and state common law claims of breach of express contract, breach of

implied contract, and unjust enrichment.

On June 22, 2018, Plaintiff filed a Motion for Entry of Default Judgment against Defendants, which the court granted by Order dated September 13, 2019 (Dkt. 53), with judgment to be entered in an amount to be determined by the court after a hearing to assess damages. An assessment of damages hearing was conducted on November 5, 2019 (0kt. 56).  A transcript of the hearing including Plaintiff's testimony and the acceptance into evidence of Plaintiff's exhibits was filed December 5, 2019.  Dkt. 58.  Based on the following Findings of Fact and Conclusions of Law, judgment should be entered in favor of Plaintiff against Defendants, in the amount of $352,773.94 plus attorney's fees and disbursements in the amount of $68,878.94.

## PROCEDURAL BACKGROUND

This case was commenced by Plaintiff's complaint filed October 5, 2016, alleging violations of the Employment Retirement Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), New York State Labor Law ("N.Y.LL") §§ 195-2, 198[1][b], and state common law claims of  breach of express contract, breach of implied contract, and unjust enrichment. An Amended Complaint was filed January 4, 2017 (Dkt. 10) adding claims under the N.Y.LL, specifically §§ 191, 193, 195, 198, and 650, with respect to Defendants' failure to provide proper notice of Plaintiff's wages, untimely payment of Plaintiff's agreed-upon wages, failure to maintain required records and an additional state common law claim for *quantum meruit.* Plaintiff's Second

Amended Complaint, filed February 28, 2017 (Dkt. 19), also alleged Plaintiff's

ERISA, FLSA, N.Y.LL and the state common law claims. (Dkt. 49).

A Scheduling Order was entered on April 6, 2017, requiring, *inter alia*, discovery

be completed by January 5, 2018 (Dkt. 25).  Thereafter, the parties engaged in

interrogation practice and document production.  Following Defendants' refusal to

comply with Plaintiff's deposition notice pursuant to Fed.R.Civ.P. 30(b)(6) ("Rule

30(b)(6)"), Plaintiff, on December 11, 2017, moved to compel Defendants' Rule 30(b)(6)

depositions (Dkt. 28).  On January 23, 2018, Defendants' counsel moved to withdraw

indicating to the court that Defendants intended to discharge counsel (Dkt. 35); on

March 8, 2018, despite counsel's unsuccessful efforts to communicate with Defendants

as requested by the court, Defendants' counsel's motion was granted without

Defendants' opposition.  Defendants' response to Plaintiff's motion to compel was

ordered to be filed by April 5, 2018 (Dkt. 38).  No opposition to Plaintiff's motion by

Defendants was filed and Plaintiff's motion was granted by Decision and Order filed

April 25, 2018 (Dkt. 42).  Plaintiff's motion for attorneys fees and expenses in

connection with Plaintiff's motion was also granted without Defendants' opposition by

Decision and Order filed May 31, 2018 (Dkt. 44) in the amount of $9,200.40.  Plaintiff's

motion for default judgment as a sanction pursuant to Fed.R.Civ.P. 37(b) for

Defendants' failure to comply with the court's order granting Plaintiff's motion to compel

Defendants' deposition was filed June 22, 2018 (Dkt. 45).  A Report and

Recommendation recommending Plaintiff's motion for sanctions be granted in part and

denied in part as moot was filed May 13, 2019 (Dkt. 49) ("the R&R").  Despite being

given notice of Plaintiff's motion for sanctions, Defendants again failed to oppose

Plaintiff's motion.  Judge Vilardo adopted the R&R by Decision and Order on September 13, 2019 (Dkt. 53) and directed the undersigned to conduct a hearing to determine the extent of Plaintiff's damages arising on Plaintiff's claims, and to file a further report and recommendation as to the amount of such damages.  The hearing was conducted by the undersigned on November 5, 2019, at which Plaintiff testified and Exhibits 1-10 were received in evidence.  A transcript of the hearing, including receipt of Plaintiff's Exhibits 1-10, was filed on December 5, 2019 (Dkt. 58) ("the Transcript").  Plaintiff's Proposed Findings of Fact and Conclusions of Law were filed in accordance with the court's direction (Dkt. 57) on December 13, 2019 (Dkt. 59).  References herein to the Transcript are to page and line numbers thereof (*e.g.*, Tr. __: __); all references to Plaintiff's Exhibits are to "Plaintiff's Ex(s) __" as submitted to the court at the hearing and together with Plaintiff's Proposed Findings and Conclusions of Law.  Based on Plaintiff's testimony, all of which the court finds to be credible, and the relevant business records received in evidence and proffered as Plaintiff's exhibits, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.      Plaintiff was employed, beginning in January 2010, as a sales and technical operations associate by Defendant Global IVR Solutions, LLC ("Global"), a local privately-owned company principally owned by Adam Long which provides customized interactive voice response applications to small and large businesses, multi-location enterprises, call centers, governments, and educational institutions world-wide. (Tr. 4:26 - 7:16).

4

2.      Adam Long is the Managing Partner of both Defendants and majority owner of Defendant Global; William Long ("Bill Long") is a minority owner and a partner of Global and majority owner of Defendant Worldlink Services Corporation ("Worldlink"). (Tr. 9:3-10:17).

3.      Plaintiff was also employed during the relevant periods by Worldlink, the parent company of Defendant Global, a related local technology company located at the same address as Global, owned by Bill Long, father of Adam Long, which provides toll free telephone numbers, web development, and mobile marketing to small and medium sized companies. (Tr. 4:11-17).

4.      Approximately 90% of Plaintiff's services were performed on behalf of Defendant Worldlink, even though Plaintiff received a paycheck from Global. (Tr. 11:24).

5.      Plaintiff and Defendants had agreed upon an annual salary of $60,000. which translated to $2,307.70 per bi-weekly pay period. (Tr. 12:21; Plaintiff's Ex. 1 at 5 (Defendants' payroll records for 2010 and 2011 establish that Plaintiff was regularly receiving $2,307.70 per pay period)).

6.      Although Plaintiff's payroll records indicate Plaintiff was receiving a mix of salary and commission, Plaintiff did not receive commissions based upon performance or sales; the amount received in commissions each pay period was exactly the same. (Plaintiff's Ex. 1 at 5-9 (payroll records 2010-2015)).

7.      Defendants indicated to Plaintiff that the above-mentioned commission plus salary would "make him whole" to match the $60,000 yearly salary that was agreed upon.  (Tr. 12:21).

8.      Plaintiff received a W-2 Wage and Tax Statement ("W-2") every year from Defendants' payroll company, Paychex, Inc., for 2010, 2011, 2012, 2014, and 2015.  (Tr. 22:15-21; Plaintiff's Ex. 2. [W-2's 2010-2012, 2014-2015]).   A copy of each year's W-2 statement was furnished to the Internal Revenue Service by Paychex, Inc. (Ex. 2[(Plaintiff's W-2's 2010-2012, 2014-2015]; Tr. 14:13- 17, 57:16-17).

9.      Plaintiff received a W-2 for 2013 from Defendants' payroll company for 2013, ComputerSearch Payroll. A copy of Plaintiff's 2013 W-2 was furnished to the Internal Revenue Service by ComputerSearch Payroll. (Ex. 2 [2013 W-2]; Tr. 14:13-17, 57:16-17).

10.     Defendants produced Plaintiff's W-2 statements for the years 2010-2015 in response to discovery demands served on Defendants. (Tr. 14:13-17).

11.     Plaintiff confirmed Plaintiff's W-2 statements submitted in evidence were the same W-2 statements Plaintiff relied on to file his yearly taxes for this period with the Internal Revenue Service and were the same records Defendants produced in response to Plaintiff's discovery demands. (Tr. 14:13-17, 23:25-24:2).

12.     Defendants produced Defendants' company payroll records (Plaintiff's Exs. 1, 6-9), concerning Plaintiff in response to Plaintiff's discovery demands served on Defendants; Plaintiff confirmed the payroll records introduced, Plaintiff's Ex. 1 at 5-9, accurately reflected his payroll for his time employed by Defendants. (Tr. 14:13-17, 16:14-16).

Unpaid Salary

13.    In 2012, Defendants approached Plaintiff and informed Plaintiff the Defendants' businesses (Worldlink and Global) were experiencing financial difficulty. (Tr. 34:11-35:4).

14.    Plaintiff was willing to forgo his salary for a short period of time until the businesses improved financially, with the express understanding with Defendants that he would be paid back in full.  *Id.*

15.    Plaintiff was not paid for 20 pay periods in 2012. Payroll Records from 2012 (Ex. 6) show that Plaintiff was only paid for weeks ending May 6, 2012, May 20, 2012, June 3, 2012, June 17, 2012, July 1, 2012, and July 15, 2012. Payroll records were not produced by Defendants that show Plaintiff received $0 or no pay check for that pay period; only documentation where Plaintiff actually received a paycheck was produced.  *Id.*

16.    Plaintiff worked at least 40  hours a week during the unpaid pay periods. (Tr. 54:24-25).

17.    In 2012, Plaintiff received $13,846.20 in salary instead of the agreed upon salary of $60,000, a difference of $46,153.80. (Tr. 21:9-11, 42:10-12; Plaintiff's Ex. 2 [2012 W-2]; Plaintiff's Ex. 6 [Timesheet week ending July 29, 2012, YTD wages and tips highlighted]; Plaintiff's Ex. 10 [Summary at 3]). Plaintiff did not receive a paycheck after the July 15, 2012 pay period. (Plaintiff's Ex. 6.)

18.    Plaintiff believed in good faith that Defendants would reimburse Plaintiff for his unpaid wages once Worldlink and Global's fiscal situation improved, which Plaintiff believed would happen.  Tr. 34:20-22; 35:17-18.

19.     Plaintiff was never reimbursed for the salary owed but unpaid in 2012 as had been agreed to between Plaintiff and Defendants. (Tr. 34:11-24; 35:2-22)

<u>Reduced Salary</u>

20.     Plaintiff received regular paychecks in 2013 until Defendants reduced Plaintiff's net pay from $2,307.70 per pay period to $1,538.46 per paid period without notice to Plaintiff, a difference of $769.24 per pay period. (Tr. 38:10-15; Plaintiff's Ex. 7 [2013 payroll records]).

21.     Defendants failed to provide Plaintiff with wage notices in accordance with N.Y.LL § 195 at any point in Plaintiff's employment with Defendants, (Dkt. 19 ¶¶ 24-25; ¶¶ 72-78; ¶¶ 85-89), thereby imposing damages upon Defendants to a maximum of $5,000.  Tr. 38:10-22; Tr. 39:9-22; Tr. 40:6-20; Tr. 41:1-25; Tr. 42:1-13.

22.     Plaintiff worked at least 40 hours per week during 16 pay periods in 2013 in which Plaintiff's pay was inexplicably reduced. (Tr.54:24-25).

23.     The decrease in payment per pay period was pointed out by Plaintiff to Bill Long not by way of any written notice by Defendants required by N.Y.LL 195. (Tr.38:17-39:19).

24.     Defendants represented to Plaintiff that the reduction in pay was the result of a payroll error by their new payroll company and that the error would be "taken care of." (Tr. 38:1 7-20, 39:21-22, 40:18-20).

25.     Plaintiff had on numerous occasions attempted to inquire of Defendants when the asserted payroll error would be fixed and was told by both Bill Long and Adam Long that they would fix the issue when they could. *Id.* The so-called payroll error was not corrected; the same asserted "error" was committed by

a different payroll company supporting a finding that the reduction in Plaintiff's salary was directed by Defendants and that Defendants misrepresented to Plaintiff their intent to rectify the problem.  (Tr. 40:14-20).

26.     Plaintiff's bi-weekly net pay was reduced for a total of 16 pay periods in 2013, 26 pay periods in 2014, and 26 pay periods in 2015. (Plaintiff's Ex. 7 [2013 payroll records]; Plaintiff's Ex. 8 [2014 payroll records]; Plaintiff's Ex. 9 [2015 payroll records]).

27.     Plaintiff received $47,692.35 in salary in 2013 instead of the agreed upon $60,000, a difference of $12,307.65. (Tr. 40:3-10; Ex. 2 [2013 W-2]; Plaintiff's Ex. 7 [2013 payroll records]; Plaintiff's Ex. 10 [Summary at 3]).

28.     In 2014, Plaintiff received $39,999.96 in salary instead of the agreed upon $60,000, a difference of $20,000.04. (Plaintiff's Ex. 2 [2014 W-2]; Plaintiff's Ex. 8 [2014 payroll records]; Plaintiff's Ex. 10 [Summary at 3]).

29.     In 2015, Plaintiff received $35,384.58 in salary instead of the agreed upon $60,000, a difference of $24,615.42. (Plaintiff's Ex. 2 [2015 W-2]; Plaintiff's Ex. 9 [2015 payroll records][1]; Plaintiff's Ex. 10 [Summary at 3]).

30.     The total amount of salary reduced by Defendant to Plaintiff for the period 2013-2015 equals $56,923.11. (Plaintiff's Ex. 10 [Summary at 3]).

31.     Although Plaintiff alleges Defendants also failed to pay his agreed salary during the period January to August 2016 when Plaintiff terminated his employment, Dkt. 19 ¶ 42; Tr. 44:10-11, Plaintiff failed to provide any testimony or

---

[1]  Payroll records for 2015 produced by Defendants were not complete payroll records, instead, only "Retirement Plan Summary-Simple IRA" forms for 2015 were produced.

documents to support such allegation and, accordingly, the court is unable to find any damages for this period in 2016 were in fact sustained by Plaintiff.

Unpaid Retirement Benefits

32.    Plaintiff participated in an employer managed Simple IRA investment account through Fidelity Investments, account number 330976504 ("Fidelity IRA"), in which Defendants agreed to withhold funds from the Plaintiff's paychecks each pay period and deposit them into his Fidelity IRA. (Tr. 16:17-18:4; Plaintiff's Ex. 3 [Fidelity Statement]).

33.    Plaintiff confirmed the Fidelity Statement (Plaintiff's Ex. 3) was an accurate copy of his Fidelity IRA Statement he accessed and printed himself from his online Fidelity IRA account when the account was still active. (Tr. 26:16-17, 70:6-20).

34.    Defendants withheld funds from Plaintiff's wages each pay period to deposit into the Fidelity IRA. (Tr. 17:22-18:3; Plaintiff's Ex. 1 [2010 payroll records]; Plaintiff's Exs. 5-9 [2011-2015 payroll records]).

35.    Defendants withheld $11,500 from Plaintiff's wages for retirement contributions in 2010. (Plaintiff's Ex. 1 [2010 payroll records], Plaintiff's Ex. 2 [2010 W-2, box 12], Plaintiff's Ex. 10 [Summary at 1]).

36.    Defendants withheld $11,500 from Plaintiff's wages for retirement contribution in 2011. (Plaintiff's Ex. 2 [2011 W-2, box 12]; Plaintiff's Ex. 5 [2011 payroll records]; Plaintiff's Ex. 10 [Summary at 1]).

37.    Defendants withheld $3,480.00 from Plaintiff's wages for retirement contribution in 2012. (Plaintiff's Ex. 2 [2012 W-2, box 12]; Plaintiff's Ex. 6 [2012

payroll records]; Plaintiff's Ex. 10 [Summary at 1]). The decrease in withholdings in 2012 can be attributed to the 20 missing pay period payments when Plaintiff had agreed to a deferred salary.

38.     Defendants withheld $13,000 from Plaintiff's wages for retirement contribution in 2013. (Plaintiff's Ex. 2 [2013 W-2, box 12]; Plaintiff's Ex. 7 [2013 payroll records]; Plaintiff's Ex. 10 [Summary at 1]).

39.     Plaintiff has no knowledge why the amount withheld increased from $11,500 per year to $13,000 per year in 2013. (Tr. 77:9-13).

40.     Defendants withheld $13,000 from Plaintiff's wages for retirement contribution in 2014. (Plaintiff's Ex. 2 [2014 W-2, box 12]; Plaintiff's Ex. 8 [2014 payroll records]; Plaintiff's Ex. 10 [Summary at 1]).

41.     Defendants withheld $11,500 from Plaintiff's wages for Plaintiff's retirement contribution in 2015. (Plaintiff's Ex. 2 [2015 W-2, box 12]; Plaintiff's Ex. 9 [2013 payroll records]; Plaintiff's Ex. 10 [Summary at 1]).

42.     Defendants failed to deposit the total amount withheld from Plaintiff's wages each pay period during 2010-2015 into the Fidelity IRA. (Tr. 26:1-30:10; Plaintiff's Ex. 3 [Fidelity Statement]).

43.     Defendants withheld from Plaintiff's wages and did not deposit with Fidelity, Plaintiff's IRA account, a total of $63,980.00 which were contributions deducted from Plaintiff's wages intended as contributions to Plaintiff's Fidelity IRA. (Tr. 30:9-10; Plaintiff's Ex. 1 at 5-9 [payroll records 2010-2015]; Plaintiff's Ex. 10 [Summary at 1]).

44.     Defendants made deposits into Plaintiff's Fidelity IRA on only three occasions: Defendant deposited $1,086.77 into Plaintiff's Fidelity IRA in September 2010; $15,000 in April 2013, and $13,000 in December 2014, totaling $29,086.77, leaving a difference of $34,893.23 from the total amount withheld of $63,980 that was not deposited to Plaintiff's Fidelity IRA as ERISA requires. (Plaintiff's Ex. 3 [Fidelity Statement]; Plaintiff's Ex. 10 [Summary at 1-2]).

45.     Plaintiff's Fidelity IRA account was earning an annualized rate of return of 8.3%. (Plaintiff's Ex. 3 [Fidelity Statement]).

46.     The value of Plaintiff's Fidelity IRA account balance was negatively affected by Defendants' failure to properly deposit the entire amount of retirement contributions withheld from Plaintiff's wages because if the funds were promptly and correctly deposited, the total balance in Plaintiff's Fidelity IRA would have, according to Fidelity, been earning an annualized rate of return of approximately 8.3%. Instead, only a portion of the monies withheld from Plaintiff's bi-weekly pay were deposited by Defendants and earning that rate of return (Plaintiff's Ex. 3 at 1 [Fidelity Statement]; Plaintiff's Ex. 10 [Summary at 1-2]).

47.     If Plaintiff's retirement contributions withheld by Defendants were properly and timely deposited, Plaintiff's Fidelity IRA would have a present value of $116,506.87 (projected through December 31, 2019). (Plaintiff's Ex. 10 [Summary at 1-2]).

48.     Instead, Plaintiff's Fidelity IRA has a projected present value of $49,599.26 (projected through December 31, 2019), a difference of $66,907.61;

therefore, Plaintiff has incurred a total of $66,907.61 in loss to Plaintiff's IRA

Fidelity account plus required interest. (Plaintiff's Ex. 10 [Summary at 1-2]).

Personal Loan for Fidelity IRA

49.     When Plaintiff discovered in 2013 his retirement contributions were not

being timely deposited into his Fidelity IRA, he furnished a personal check to

Defendants before the deadline[2] for contributions not yet made to the Fidelity IRA

for that year (2013), in an attempt to mitigate the damage that was being done to

Plaintiff's IRA account by Defendants' failure to timely deposit the withheld amounts

intended for Plaintiff's IRA; Defendants were to deposit Plaintiff's check into

Plaintiff's Fidelity IRA. (Tr. 28:3-21, 71:25-73:18).

50.     Plaintiff furnished a personal check in the amount of $10,380 to

Defendants, specifically Defendant Global, on April 16, 2013 and Defendants

cashed the check on April 17, 2013. *(Id.;* Plaintiff's Ex. 4 [Plaintiff's IRA Check

deposited by Defendant Global]).

51.     While Defendants eventually made a $15,000 deposit into Plaintiff's

Fidelity IRA in 2013, Defendants also withheld $13,000 from Plaintiff's wages

and earnings that year in addition to depositing the personal check furnished from

Plaintiff. (Tr. 72:11-73:11; Plaintiff's Ex. 1 [2013 W-2]; Plaintiff's Ex. 7 [2013

payroll]; Plaintiff's Ex. 10 [Summary at 1]).

52.     Recovery of the amount of Plaintiff's personal check is not included in

Plaintiff's claim for Plaintiff's retirement contributions wrongfully withheld by

Defendants and earning a rate of 8.3%; Plaintiff seeks repayment of the personal

---

[2]  Based on Plaintiff's belief that the deadline for depositing retirement contributions is also the tax
deadline for filing, on or around April 15th.  (Tr. 56:4-10).

check with interest for Defendants' unjust enrichment with respect to the amount of Plaintiff's check received but not yet returned to Plaintiff by Defendants. (Plaintiff's Ex. 10 [Summary at 3]).

53.    The combination of salary withheld, reduced salary, and Plaintiff's personal check Fidelity IRA received by Defendants totals $113,456.91 owed to Plaintiff and represents Plaintiff's damages without the addition for interest and statutory liquidated damages. (Ex. 10 [Summary at 3]).

54.    Based on the evidence presented at the hearing, the court finds Defendants are liable to Plaintiff in the total amount of $421,662.08 including statutory interest through December 31, 2019.  *See* Appendix hereto detailing the amount of Plaintiff's damages attributable to each of Plaintiff's claims including applicable interest.

## CONCLUSIONS OF LAW

<u>Analysis</u>

1.    This court has jurisdiction pursuant to ERISA §502(e), 29 U.S.C. §1132(e), 28 U.S.C. §§1331, 1337 and 1343(f). The matter in controversy arises under an act of Congress relating to the denial of benefits under an Employee Benefit Plan and the failure to pay wages in violation of the FLSA.

2.    This Court has supplemental jurisdiction of Plaintiff's claims pursuant to New York Labor Law and state law common law claims under 28 U.S.C. § 1367.

3.    Defendants' liability has been established through the issuance of a court order striking Defendants' answer and entry of a default judgment pursuant to Fed.R.Civ.P. 37(b)(2)(A)(iii) and(vi) as a sanction.

4.       Defendants' default establishes their liability on each of Plaintiff's claims as a matter of law, *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995), leaving only the issue of damages for the court's determination.  *See Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999) (remanding for district court to conduct inquiry to ascertain with reasonable certainty the amount of damages to which the plaintiff was entitled after finding default judgment warranted based on the defendant's failure to defend).  A damages inquest may be held on the basis of documentary evidence alone or may include an evidentiary hearing but, in any event, must "ensure that there [is] a basis for the damages specified in the default judgment."  *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (bracketed material added).  In the instant case, the court's damages determination is based on both documentary evidence as well as Plaintiff's testimony given at the November 5, 2019 evidentiary hearing.

Plaintiff's claims for non-payment of wages are asserted under both the FSLA and N.Y.LL, both of which provide for liquidated damages equal to 100% the underpaid wages due absent a showing the underpayment was in good faith compliance with the law.  *See Leevson v. Aqualife USA Inc.*, 770 Fed.Appx. 577, 583 (2d Cir. Apr. 26, 2019) (affirming district court's awarding double damages as liquidated damages under both the FSLA and N.Y.LL and citing *Barfield v, New York City Health and Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) ("This court has characterized the employer's burden [under the FSLA] as a difficult one, emphasizing that double damages are the norm and single damages the exception." (internal quotation marks and citation omitted))).

Nevertheless, "[d]ouble recovery is generally disfavored," such that the FLSA and N.Y.LL do not "allow[ ] duplicative liquidated damages for the same course of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).

"It is well settled that in an action for violations of the Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated damages." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (citing cases). Under the N.Y.LL, however, Plaintiff may recover both liquidated damages as well as pre-judgment interest, although pre-judgment interest applies only to the underpayment of wages and not to the liquidated damages. *De La Cruz Moreno v. Happy Angel Nail Spa, Inc.*, 2019 WL 2438966, at * 8 (S.D.N.Y. June 12, 2019) (citing N.Y. Labor Law § 198[1-a] and cases), *report and recommendation adopted by* 2019 WL 2717153 (S.D.N.Y. June 28, 2019). "Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Jiao v. Shi Ya Chen*, 2007 WL 4944767, at * 17 (S.D.N.Y. Mar. 30, 2007) (citing *Estanislau v. Manchester Developers, LLC*, 316 F.Supp.2d 104, 112, n. 2 (D.Conn. 2004) (noting that "[t]o the extent that state law provides a greater remedy than the FLSA, [p]laintiff would not be precluded from recovering under it")). Here, although both federal and state law allow for liquidated damages equal to 100% of the underpaid wages, because New York law also permits the recovery of interest on the underpaid wages, whereas federal law does not, Plaintiff's recovery is pursuant to N.Y.LL rather than the FSLA. Plaintiff thus is entitled to recover under N.Y.LL prejudgment interest on the unpaid wages in addition to liquidated damages.

As relevant here, prejudgment interest in New York, including on unpaid wages recovered under the N.Y.LL, is calculated at a rate of 9 percent per annum. N.Y. Civ. Prac. L. & R. §§ 5001(a), 5004; *De La Cruz Moreno*, 2019 WL 2438966, at * 8. Although generally "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, . . . [w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. Civ. Prac. L. & R. § 5001(b). In the instant case, Plaintiffs' claim for unpaid damages arose on different dates, including January 1, 2012 through December 31, 2015. The midpoint of these dates is January 1, 2014. Accordingly, the court elects to use January 1, 2014 as the commencement date for computing the 9% prejudgment interest to be awarded.[3] With regard to post-judgment interest, N.Y.LL § 198(4) provides "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."

Insofar as Plaintiff also seeks to recover for funds Defendants were required to remit to an ERISA Employee Benefit Plan such as the Fidelity IRA on Plaintiff's behalf, such funds are recovered under federal law, *i.e.*, ERISA, and, as such, are subject to prejudgment interest computed at the federal interest rate set forth in 26 U.S.C. § 6621(a)(2), calculated from the date of entry of judgment, computed daily to the date of payment, and compounded annually. 29 U.S.C. 1132(g). The federal interest rate applicable to the attorney fees and costs awarded in connection with Plaintiff's claims,

---

[3] Prejudgment interest under New York law is calculated on a simple, rather than compound, interest basis. *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998).

including $59,678.54 awarded for Plaintiff's attorney services rendered in connection

with the November 5, 2019 evidentiary hearing for damages, as well as $ 9,200.40

previously awarded May 31, 2018 (Dkt. 44) in connection with Plaintiff's successful

motion to compel, which amount, to date, remains unpaid; *see Garnet Analytics, Inc. v.*

*Diversified Solutions, Inc.*, 2013 WL 6511940, at *8 (D.Conn. Dec. 12, 2013) (including

in final award of attorney fees and costs amount previously awarded yet unpaid), is set

forth at 28 U.S.C. § 1961(a).  Defendants' default therefore entitles Plaintiff to a total

award based on the foregoing statutory requirements.

5.     As noted, a hearing was conducted to determine damages on

November 5, 2019. Plaintiff testified; Exhibits 1-10 were entered.

6.     The following exhibits were entered into evidence:

Plaintiff's Exhibits

| | |
|---|---|
| 1 | 2010 Payroll Record |
| 2 | W-2 Statements 2010-2015 |
| 3 | Fidelity IRA Statement |
| 4 | Personal IRA Check |
| 5 | 2011 Payroll Record |
| 6 | 2012 Payroll Record |
| 7 | 2013 Payroll Record |
| 8 | 2014 Payroll Record |
| 9 | 2015 Payroll Record |
| 10 | 2016 Payroll Record |

7.     Exhibits 1, 2, and 5-10 were produced by Defendants in response to

discovery demands. (Tr. 23:25-24:2). Payroll records and W-2 statements were

electronically generated by Defendants' payroll companies, PayCheck Inc. and

ComputerSearch Payroll, and constitute Defendants' financial records maintained

by Defendants in their ordinary course of business.

8.     Plaintiff credibly testified that as an employee of Defendant Global and Worldlink, he is familiar with and has knowledge of the payroll practices of Defendants, including the companies with whom the Defendants contracted for Defendants' payroll services; Plaintiff confirmed PayCheck Inc. and ComputerSearch Payroll generated the payroll and W-2 statements introduced as exhibits. (Tr. 41:22-42:1; 58:16-19).

9.     The payroll records and W-2 statements introduced as exhibits are the same documents Defendants produced in response to discovery demands by Plaintiff's attorneys, the Tarantino Law Firm, LLP, thereby confirming they are Defendants' business records and the court therefore finds they are an accurate representation of what Plaintiff was paid by Defendants. (Tr. 14:13-17, 16:14-16).

10.     In addition, Plaintiff confirmed through testimony that the W-2 statements introduced were copies of the same W-2 statements Defendants' payroll companies required to be filed with the Internal Revenue Service, and that Plaintiff relied on the W-2 statements to file his annual tax return with the Internal Revenue Service. (Tr. 23:25-24:2, 57:16-17).

11.     Where the employee, like Plaintiff, provides services to one business but is paid by another, each entity is considered as a joint employer and both are jointly and severally liable for unpaid wages under the FLSA and N.Y.LL where both entities provide the employee with workspace and materials to provide services to both entities.  *See Mattia v. Ferrara Foods & Confectioners, Inc*, 2013 WL 2339925, at *2 (S.D.N.Y. 2013).  Here, Plaintiff worked at offices used by both defendants for their related business operations with 90% of his time devoted to Defendant

Worldlink's business although Plaintiff's paychecks were payable by Defendant

Global IVR, thereby establishing a joint-employer relationship with both Defendants

making Defendants jointly and severally liable for Plaintiff's damages. *See*

*Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 193096 (S.D.N.Y.

2003) (finding two defendants were joint employers of plaintiff and thus jointly and

severally liable under FLSA and N.Y.LL).

12.     In regard to the admissibility of computer-generated business  records,

Fed.R.Evid. 803(6) ("Rule 803(6)"), a document must satisfy the following five

requirements to be available under the business-record exception to hearsay rule:

1) the document was made in the regular course of business; 2) the document was

kept in the regular course of business, 3) the document was made in response to a

regular practice of the business; 4) the document was made at or near the time by

someone with knowledge or from information transmitted from someone with

knowledge; and 5) the custodian certifies the record.  *Abascal v. Fleckenstein,* 820

F.3d 561, 565 (2d Cir. 2016).  When a witness is used to lay the foundation for

admitting records under Rule 803(6), all that is required is that the witness be

familiar with the record keeping system. See *Phoenix Associates III v. Stone*, 60

F.3d 95, 101 (2d Cir. 1995) (finding accountant for investment partnership was

sufficiently familiar with partnership's business practices, including record keeping,

as to be qualified to lay foundation for admitting records under Rule 803(6)).

13.     The payroll records and W-2 statements submitted by Plaintiff satisfies

all the requirements to be available under the business-record exception to the

hearsay rule: the documents were made in the regular course of business, kept in

the regular course of business, and made in response to a regular practice of business. In addition, the documents were made at or near the time from someone with knowledge or from information transmitted from someone with knowledge; the information was transmitted to Defendants in their regular course of business from a professional payroll company and kept in Defendants' records for business purposes. The documents were then produced by the Defendants in response to discovery demands by Plaintiff. Plaintiff is familiar with Defendants' record keeping systems as an employee who received bi-weekly paychecks and yearly W-2 tax statements, and confirmed through Plaintiff's testimony the accuracy and authenticity of the records produced at the damages hearing sufficient to support admissibility.

14.    The payroll records and W-2 statements also contain self-authenticating metadata, which consists of a client number, run-date, and payroll company insignia on each document, supporting the conclusion that the exhibits entered are copies of authentic payroll records and W-2 statements produced by a third-party professional payroll company pertaining to Plaintiff, satisfying the requirements under Fed.R.Evid. 90l(b)(4) for authenticating electronic documents.

<u>Damages</u>

15.    Plaintiff is entitled to the amount of unpaid wages and an additional amount as liquidated damages for all wages not paid in a timely manner, attorneys fees and interest under N.Y.LL § 198 [1-a] which provides that, unless the employer shows a good faith basis to believe the underpayment of wages was compliant with

the law, a plaintiff is entitled to liquidated damages of 100% of the underpayment due up to a maximum of $5,000. *De La Cruz Moreno*, 2019 WL 2438966, at *6 (citing N.Y.LL § 198[1-a]). Here, Defendants are in default and thus have provided no such good faith basis to avoid the penalty imposed by N.Y.LL § 198[1-a].

16.    Plaintiff is entitled to recover his lost wages and compensation in the amount of  $103,076.91.

17.    Plaintiff is entitled to statutory simple interest on the lost wages and compensation at an annual rate of 9% totaling $9,276.92 per year, for total prejudgment interest of $55,661.53 for the period January 1, 2014 through December 31, 2019 upon an entry of judgment based on the District Judge's action on this Report and Recommendation on Plaintiff's unpaid wages in violation of N.Y.LL § 198 [1-a] pursuant to N.Y.Civ.Prac.L.R. §§ 5001[a], 5004. (N.Y.LL § 198[1-a]).

18.    Plaintiff is entitled the repayment of the $10,380 payment Plaintiff made to Defendants in April 2013 for remittance to Plaintiff's Fidelity IRA.

19.    Plaintiff is entitled to statutory simple annual interest at a rate of 9% on the payment  totaling $934.20 per year pursuant to N.Y.Civ.Prac.L.R. § 5004, for total interest of $6,268.10 in prejudgment interest as of December 31, 2019 on the IRA payment Defendants retained but did not remit.

20.    Plaintiff is entitled to an award of liquidated damages under N.Y.LL § 198[1-a] in the amount of $103,076.91 equal to the amount of Plaintiff's unpaid wages.

21.     Plaintiff is entitled to recover the greater of the amount that otherwise would have been earned on the participant contributions from the date on which such contributions were paid to, or withheld by, the employer until such money is transmitted to the plan, *i.e.*, the Fidelity IRA, had such contributions been invested during such period in the investment alternative available under the plan which had the highest rate of return, or interest at a rate equal to the underpayment rate defined in section 6621(a)(2) of the Internal Revenue Code from the date on which such contributions were paid to, or withheld by, the employer until such money is fully restored to the plan as provided by 29 C.F.R. § 2510.3-102(a)(1).

22.     Plaintiff is entitled to $66,907.61[4] in unpaid retirement contributions and benefits pursuant to 29 C.F.R. § 2510.3-102(a)(1).

23.     If any employee is not provided within ten business days of his or her first day of employment a notice as required per N.Y.LL § 195, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees. N.Y.LL § 198[1-b], plus $450 in 9% annual interest since August 29, 2014, *i.e.*, the mid-point between May 18, 2013 when Plaintiff first received reduced pay without the requisite notice, and December 31, 2015, totaling $2,402.88, as of December 31, 2019. *See Rana,* 887 F.3d at 123 (affirming district court's calculation of damages that included 9% interest on N.Y.LL § 198[1-b] violation).

---

[4] Because Plaintiff applies an annualized rate of return of 8.3% to the withheld retirement contributions, the court, in its discretion, does not also award prejudgment interest. *See Jones v. UNUM Life Ins. Co. of America*, 223 F.3d 130, 139-40 (2d Cir. 1998) (district court has discretion whether to award prejudgment interest in suit to enforce a right under ERISA).

24.     The prejudgment interest on Plaintiff's state claims, including for unpaid and underpaid wages, the notice violation, and the IRA loan, continues to accrue at a daily rate of $29.21 from January 1, 2020 until the District Judge enters judgment.

25.     Plaintiff is also entitled to $58,590.00 in attorneys fees and $1,088.54 in disbursements pursuant to Fed.R.Civ.P. 37(b)(2)(C), (d)(3), ERISA § 502, 29 U.S.C. § 1132(g) and N.Y.LL § 198[1-b] for representing Plaintiff in this matter. (*See* Declaration of Kevin. P. Wicka for attorneys fees pursuant to court's request at November 5, 2019 evidentiary hearing for damages, submitted on December 13, 2019) (Dkt. 59-1).

26.     Additionally, Plaintiff should recover from Defendants $9,200.40 in attorneys fees and expenses awarded to Plaintiff as a sanction based on the part of Plaintiff's motion to compel, Dkt. 44, which remains unpaid, for a total award of attorneys fees and related costs in the amount of $68,878.94.

27.     The court finds the amount of time incurred by Plaintiff's attorneys in the prosecution of this matter to be reasonable considering the somewhat unusual difficulty presented in reconstructing Plaintiff's claims, given Defendants' refusal to participate in scheduled Defendants' Rule 30(b)(6) depositions by Plaintiff, *see* Dkt. 44 (D&O dated May 31, 2018 approving hourly billing rate for Mr. Wicka, Plaintiff's attorney of $350, and $225 for Mr. Wicka's associate, Justina Potenzo).  The court further finds the hourly rates charged by Plaintiff's counsel to be reasonable in the Buffalo area market for legal services by Wicka, an experienced attorney, and his less experienced associate attorneys.  *See*

*Scott-Iverson v. Independent Health Association, Inc.*, 2016 WL 1457881, at *4

(W.D.N.Y. Apr. 14, 2016) (citing *Langhorne v. Takhar Group Collection*

*Services, Ltd.,* 2016 WL 1177980, at *2 (W.D.N.Y. Mar. 4, 2014) ($300/hr.

reasonable for experienced attorney; $175 reasonable for newer attorneys)).


**CONCLUSION**

Based on the court's Findings of Fact and Conclusions of Law,  judgment

should be entered in favor of Plaintiff and against Defendants, jointly and severally,

in the amount of $352,773.94 as of December 31, 2019, plus attorney's fees and

disbursements in the amount of $68,878.94 for a total award of $421,652.88.  Statutory

prejudgment interest at the rate of 9% per annum through the date of entry of judgment

on this amount should also apply, with post-judgment interest in accordance with N.Y.LL

§ 198(4) and 28 U.S.C. § 1961 thereafter accruing until payment is rendered in full

satisfaction of the judgment by Defendants.  The Clerk of Court is directed to mail a

copy of this Report and Recommendation by United States Postal Service to

unrepresented Defendants, care of William Long and Adam Long, at 1879 Whitehaven

Road, Ste. 1, Grand Island, New York, 14078-1885.  The Clerk of Court also should be

directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  January 22, 2020
        Buffalo, New York

**APPENDIX**

**New York Claims**

| Unpaid Wages and Compensation | | | Running Total | |
|---|---|---|---|---|
| 2012 | $ | 46,153.80 | $ | 46,153.80 |

**Reduced Wages and Compensation**

| 2013 | 12,307.65 | 12,307.65 | |
|---|---|---|---|
| 2014 | 20,000.04 | 32,307.69 | |
| 2015 | 24,615.42 | 56,923.11 | 103,076.91 |

**Notice Violation**

| Entitled to maximum $ 5,000 | | | 108,076.91 |
|---|---|---|---|

**Loan to IRA**

| Tendered by Plaintiff to Defendant, but never remitted to IRA account nor returned | $ 10,380 | 118,456.91 |
|---|---|---|

**Interest as of 12/31/2019**

Unpaid and reduced wages occurred between 1/1/2012 and 12/31/2015. The mid-point of these two dates is 1/1/2014.

| New York annual interest of 9% on $ 103,076.91 = | $ 9,276.92 |
|---|---|
| for 6 years (2014-2019) | X      6 |
| Total interest unpaid wages | $ 55,661.53 |

Notice violations occurred between 5/19/2013 and 12/31/2015. The mid-point of these two dates is 8/29/2014.

| New York annual interest rate of 9% on $ 5,000 = | $      450.00 |
|---|---|
| for 5 years (2015-2019) | X        5 |
| | 2,250.00 |
| plus 124 days from 8/29/2014-12/31/2014 = | 152.88 |
| Total interest notice violation | 2,402.88 |

Interest on undeposited and unreturned IRA contribution:

New York annual interest of 9% on $ 10,380 =          $    934.20

      for 6 years (2014-2019)          <u>X          6</u>
                                             5,605.20
      plus 259 days from 4/16/2013 -12/31/2013 =          <u>662.90</u>

      Total interest on unreturned IRA contribution     $6,268.10

Total interest due under New York law as of 12/31/2019:

                                               <u>$ 64,332.51</u>  $ 182,789.42

Plus liquidated damages on Plaintiff's
unpaid and reduced wages and compensation          <u>$ 103,076.91</u>

Total due on New York claims thru 12/31/2019          <u>$ 285,866.33</u>

(On the New York claims, an additional $ 29.21 in interest
 continues to accrue per day until the District Judge enters
 judgment.  Through the date of this Report and
 Recommendation, the additional interest for 2020 is $ 642.62.
 If the judgment is not paid within 90 days of entry, an additional
 15% is to be added pursuant to N.Y. LL § 198[4]).

**Federal ERISA claims**:

(Because the court has accepted the annualized
 interest rate of 8.3% applied by Plaintiff, no
 prejudgment interest is applied)          <u>$ 66,907.61</u>  $ 352,773.94

**Attorney Fees and Costs**

      Previously awarded:          $  9,200.40
      Evidentiary hearing:          59,678.54

      Total Fees and Costs:          $68,878.94

Grand Total Due as of 12/31/2019:          <u>$421,652.88</u>[5]

---

[5]  The court notes this amount exceeds the Plaintiff's calculation of damages, *see* Dkt. 59 at 15, in excess of $88,000 as Plaintiff's calculation failed to include the required interest rates on all periods covering Plaintiff's total damages and the court's inclusion of the outstanding attorneys fees of $9,200 awarded as a sanction on Plaintiff's motion to compel.

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72(b).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*,  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*,  892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*,  838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     January 22, 2020
              Buffalo, New York